Mr. Morris, good to have you here, sir. Actually, it's good to be back. I've not been before you before, your honor. May it please the court. It's still morning. Good morning to each of you. I'm John Morris. I represent Marie McCray, the appellant in this particular case. Ms. McCray, who happens to be seated in the courtroom back there, is a longtime Maryland employee. In October 2009, Maryland eliminated her position. She believes that the administrative actions that led to her being identified as a candidate for having her position abolished was based upon her race, her age, her disability. She brought, at the end of 2011, an action in the district court. The first pleading filed by the State Department, the Maryland Department of Transportation, Maryland Transit Administration Are those the only two defendants? Yes. The Department of Transportation and the Transit Administration. They run the trains? Excuse me? They run the commuter trains or something? That's it. That's it. It's a model of the Maryland Department of Transportation. Ms. McCray was a long-term employee of the Maryland Transit Administration. The combination of those two parties are the employer here. And the... And who's the culprit in this? It's her boss? Well, the culprit is the deputy director, Michael Dietz, who was a, I believe... That was her supervisor? Second-line supervisor, I believe, who began having interactions with her that related to her disability. She believes also involved race. And Mr. Dietz also was a person consulted regarding the decision around cutting. Now, there was more to this action that the allegations of the year before the position was abolished, he removed the duties that Ms. McCray had handled for some number of years up to this point and gave them to someone else, which left her in a position of having very little to do in an area where everyone was overburdened. Is that before or after she got the diabetes and passed out? This was after she got the diabetes and passed out. And the issue here is whether or not the abolition of her position can be an adverse employment action that enables her to complain about, among other things, Mr. Dietz's actions. Now, the... You're suing under the, what, the ADA and... As well as Title VII. But not... There's no 1983 case here. There's no 1983 case there. The... What we basically had in response, I think, as I'm sure the court has seen in reading the briefs, is an assertion of legislative immunity because the state had decided, because of a budget crisis, it wanted to eliminate positions. And Mrs. McCray's position was among the positions eliminated. According to the record, there appears to have been about, I believe, 23 or so positions that were occupied of the some 60, I believe, that the Department of Transportation abolished. At least the... Who abolished them? It was abolished by the employer. The Maryland Department... By the what? The employer, the Maryland Department of Transportation and the Maryland Transit. Who made the decision to abolish these positions? Well, ultimately, it was decided by... A decision maker would have been the administration of the department. Now, Mr. Dietz was someone who advised regarding who should be cut... Well, who was in the legislature? Well, the decision made for the application of this particular immunity was a decision was made by the legislature to cut the budget. They left it to the executive, at least portions of the executive, to decide what was to be cut. Now... Did the legislature adopt an act? They didn't make any decisions. Well, as it has been applied by the... Did you do... Has anybody got a citation to anything they adopted? Well, I'm sure that the attorneys for the state will be able to answer that particular question. But what the district court did was to accept certain actions of the executive as being consistent with a legislative duty around the budget. So, is it fair to say that everything was done here was by an executive... Somebody in the executive branch of the government? Seeking to... Or do you know? Seeking... It has been alleged that... I know you claim that you don't... Didn't have good enough discovery. That's correct. You may not know everything. I don't know very... I don't know everything about that. Well, but what they have is legislative immunity. And there is... There's some principles of law that people aren't in the legislature, in certain instances, can be accorded legislative immunity if they tie it in right. I'm just trying to figure out what you say they didn't do to tie it in. Well, what we're saying is that there are certain actions that we're complaining about that aren't legislative at all. Mr. Deeds didn't have anything to do with the legislature. That's what we're saying. And who was his boss, then? Well, his boss would have been the administrator for the Maryland Transit Administration and the Secretary of Transportation. Who worked for who? The governor? Who worked for the governor. The secretary worked for the governor. That's correct. And there was a Board of Public Works in here somewhere. Yes, the Board of Public Works had to approve the cuts that were made. And who's on the Board of Public Works? Board of Public Works would consist of the governor, the comptroller, and the state treasurer. And who's the comptroller? How does he get elected? Oh, he's elected by the state of Maryland, by the people. He's elected by the voters. That's correct. Governors elected by the voters, the state legislatures. But none of them serve in the legislature. And I've got no allegations that they did anything wrong. My concern is Mr. Deeds. Well, you didn't sue him. You didn't sue the Board of Public Works. No, I did not. And you didn't sue the governor. I simply sued the employer. You didn't sue any individuals. That's correct. Generally speaking, consistent with the law of Title VII. So what we have here is the Department of Highways, or the Department of Transportation, and the Transit Authority have legislative immunity. That's the argument. Now, the question is... Well, that's the holding of the district judge. That's correct. That's the ruling. That's the ruling. The question is whether the ruling is correct. But they say in the alternative, even if they don't... Maybe if they don't have a legislative immunity, they got sovereign immunity. Well, that's only as to certain claims that would relate to the age discrimination and the disability discrimination. However, there is available federal authority under the Rehabilitation Act of 1973, for which there is no sovereign immunity. So there... But none of the... The sovereign immunity wouldn't get them out of everything. Wouldn't get them out. Certainly wouldn't get them out of Title VII. And it wouldn't get them out of possibly the Rehabilitation Act of 1973, which are based upon the same factual allegations, essentially. So that... They also say that the complaint fails to state a claim upon which relief can be granted. Well, again, there are allegations that there was discrimination. There are allegations of what happened. And the contention that really this court has to consider is, has a sufficient showing been made under Rule 56D to allow Ms. McRae to secure discovery to get the facts, to highlight those special activities that this court has identified as not being subject to legislative immunity. And I'm referring to the Washington Suburban Sanitary Commission case and the decision of Judge Wilkerson from 2011. In that decision, when faced with a subpoena from the EEOC, Judge Wilkerson identified areas where the defendants, at least the respondents, the Washington Sanitary... Suburban Sanitary Commission's assertion that the subpoena should be quashed was overly broad. And what he specifically went to were two areas. One, activities before the formulation of the particular action that the Washington Suburban Sanitary Commission contended was subject to legislative immunity and hiring afterwards. Do you know what the Board of Public... Did the Board of Public Works observe any formal legislative procedures when they did what they did? I cannot speak to that. Again, as I say again, my concern is Mr. Dietz and that Mr. Dietz's activities fall within the purview of Judge Wilkerson's decision. That Judge Wilkerson identified that the EEOC might have been looking at issues of training prior to the reformulation of the department that was the focus of the application of legislative immunity. And because that was present, Judge Wilkerson concluded that the EEOC at least had the authority to pursue its investigation as to those non-legislative activities. In this case, we have a situation with Ms. McRae where Mr. Dietz made a judgment about removing from her duties that she had for a long-term performed, which left her vulnerable to the kind of budgetary cut we're looking at. And if, in fact, that action were motivated by race, and we contend it was... Well, they say... They say, I think they... I'm talking about the other side and the judge, that legislative immunity protects them even if there was a discriminatory animus. Well, that's not what I am saying. What I am saying is if what Mr. Dietz did before the legislative decision was what he did, he bears no protection by any legislative immunity according to Judge Wilkerson's decision in the EEOC versus Washington Suburban Sanitary Commission case. And that's what we're contending. You just want us to send us back for a discovery? That's correct. That's all that I'm asking for. We contend there were acts before the budget cut, there were rehires of people after the budget cuts. We're not contending, and I think this is an interesting case, it's just not this case, that what was done with the budget cuts expressly was intended for this purpose, and it was done so by the legislature, the governor, and there may be some instances where that might happen. It might have happened in the past, and it might happen in the future. It's not this case. Our concern is Michael Dietz. Michael Dietz was a supervisor who, for the events we're concerned with, was acting as a supervisor, not an adjunct to the legislative process. You're not trying to protect anybody other than your client in connection with this reduction? For this particular appeal, the only client I'm representing is Ms. McCray. There are three other persons who are in various postures in the District of Maryland who have similar concerns on facts which are separate and identifiable for them, but it's based upon the same principle. If, in fact, what they're contending their employer did was what employers do all the time, unrelated to any desire to address a budgetary issue, that is subject to Judge Wilkinson's decision, and Judge Wilkinson's decision... Judge Wilkinson, you think... I think you like Judge Wilkinson's case pretty much. Well, not only do I like his case because he rules the way I'd like him to rule, but it makes sense, and it makes sense in this way. It says that not everything is about budget cutting. Sometimes, malefactors do things outside of that process, and to the extent they do, the protection of legislative immunity ought not apply. Judge Wilkinson looks at litigation, and he says something which I think makes a lot of sense. He says that litigation, by its nature, features dark and bright sides of the moon. It sounds entertaining, but... Sounds like it's a lot addictive. That's what they're probably going to say, that what you're up here is arguing a bunch of dicta. No, it's not. As far as this particular case is concerned, this is what the case is about. This is the rule of that decision. The decision went to the scope of how an EEOC subpoena would apply in the face of the same assertion of immunity that's made in this case. And in the face of that same assertion of immunity, Judge Wilkinson identified certain areas where it is the job of this court to delineate what's covered by the privilege and what's not. And for him, events that occurred before the formulation of a budget determination aren't covered by the privilege. Events that occurred after the delineation of a budgetary decision aren't covered by the privilege. And for this particular appeal, that delineation, which is the basis for Judge Wilkinson's decision, was not performed in the district court. And we're asking that the case be remanded back to the district court so that delineation that's the basis for the decision in Judge Wilkinson's EEOC case be performed. And that requires that this case be vacated and returned back to the district court. Thank you, Mr. Morris. Ms. Katz, good to have you here. Thank you very much. Good morning, your honors. May it please the court. Jennifer Katz on behalf of the Maryland Department of Transportation and the Maryland Transit Administration. I just would like to clear up briefly some of the history that came before this fiscal year 2009 budget cuts. And that was that in late 2008, the state was facing an extensive budget gap of over $450 million. And the governor of Maryland reduced the state's budget appropriations in accordance with his statutory authority to cut unnecessary expenditures from the budget with the approval of the Board of Public Works. This is in Section 7-213 of the State Finance and Procurement Article. And the way that Maryland interprets this statutory authority is it is akin to a legislative enactment. And the Maryland High Court has interpreted this type of action as legislative in nature. So the governor and the Board of Public Works did all this and the legislature did nothing. The legislature was not involved. Is that right or wrong? That's correct.  This is one method of budget making under Maryland law. There are three ways. I just want to make sure there's nothing here we're talking about that was done by the legislature of Maryland. That's correct. Not a single thing was done by the legislature of Maryland. What you're trying to do is give legislative immunity for the defendants here in the context of that. Well, that's right. We've got to figure out whether you're stretching it too much. I understand, Your Honor. The General Assembly gave the governor, along with the approval of the budget of the Board of Public Works, the authority to reduce the budget, to cut unnecessary budget expenditures in between fiscal years to give the state more flexibility in budget making. And so that's what the governor did here. And as this type of budget making has been interpreted by the Maryland High Court, this is legislating. This is budget making. Is that binding on us, what they say? That's not binding on us, but in Baker v. Baltimore, this court identified the elimination of a government position as a uniquely legislative function. And in Bogan v. The elimination of a government position by whom? By anyone. And by the legislature, or in that case, was it by the legislature or by some executive? It was actually by the Board of Estimates. It was the Baltimore City's Board of Estimates. It was a very similar type of action that occurred here. There, the mayor had to identify budget cuts. She asked the city agencies, just as here, the governor requested, sent out a demand to the state agencies to identify 5% of cuts in the budgets. And then the Baker case, similar type of thing, the mayor did the same thing. Then there were recommendations from supervisors, from the city agencies. And it was the mayor then sent the proposal to the Board of Estimates, just as here, the governor sent the proposal to the Board of Public Works. And the Board of Estimates approved it, just as the Board of Public Works did here. And in Baker versus Baltimore, they did, this court did apply legislative immunity because it said- Is that our case? Yes, that's 894 F2nd at 682, as Judge Hall wrote that opinion. I know the case you're talking about. I know the one Judge Hall wrote. I just didn't recognize the name. And then also, just last year, in Kensington Volunteer Fire Department versus Montgomery County, which is at 684 F3rd, 462, this court held that people who propose, assist, or advocate for budgetary action are entitled to legislative immunity. And in that case, this court afforded legislative immunity to a county executive and a fire chief who proposed eliminating funding for 20 local fire rescue department positions, all of which were filled. And what the court said was, this is not like the hiring or firing of a particular employee. The removal, the elimination of a state or a city position is prospective in nature. It is legislative in nature, and therefore legislative immunity attaches. And that follows from the Supreme Court's case of Bogan, where a small town mayor in Massachusetts targeted a woman for elimination, to eliminate her position from the budget based on the First Circuit had found based on her race and based on the exercise of her First Amendment rights. And what the Supreme Court said was, the first question we answer is, was the action here legislative in character? Was it legislative in nature? And they said, budget making is quintessential legislative function. And when that occurs, we then don't go delving into what the motivations were of any of the decision makers. So it is your position then that if you have a reduction in force that specifies a position, they could do it for any otherwise wrong reason. Well, that's what the... Discriminatory, but you can do it solely on the basis of race. Purposeful. And it would be protected by the legislature, by the legislative immunity. That's your position. That is the position. And that's going to be hard to sell to a lot of us. It certainly... Well, I mean, you're trying to stretch things. But that's what the court... That's what the Supreme Court... That would... You take that same principle and resegregate the schools. No, well, but the... This is what the Supreme Court did in Bogan versus Scott Harris, which is found at 523 U.S. at 54. In that case, the mayor of a town wanted to get rid of one of the city officials and proposed a budget eliminating her position. And the First Circuit found that they had targeted her because of her race and her exercise of her First Amendment rights. And what the Supreme Court held in Bogan was that you don't go to the motivations of the decision maker. You stop at whether the... Whether the activity was legislative in nature and budget making is legislative. Now, there was no legislature here that voted to fire Ms. McRae. It was the governor working in... And the governor didn't vote to fire Ms. McRae and the Board of Public Works didn't. No, that's not... They designated some position as a result of her being identified, fingered by Mr. Dietz. Well, I think that's an... He identified her. ...reading of the record. And, right? And they alleged that he had been treating her bad for a year before that. That because after she passed out, he wanted her to quit and she wouldn't quit. And he took all her jobs away from her and all that stuff. And then when they came around and needed to have this reduction enforced for budget purposes, he identified her to his boss at the Transportation Department as a person that... As a position we just ought to eliminate. That'll take care of this problem. Well, what happened... This is really... We got to look at this in the light most favorable to her. I understand. You read all that. It's undisputed. It's undisputed that what happened with the fiscal year 2009 budget cuts is that... It's not undisputed what happened with respect to how they came about. What did they do that supports the proposition, as Judge Wilkinson said, that what they did bears the outward marks of public decision-making, including the observance of formal legislative procedures. What did they do to do that? Was the meeting of the Board of Public Works open to the public? I'm not sure... Did they keep a record of it? Was she discussed? Go ahead. No individual people who filled these positions were discussed. It was an agenda item with the Board of Public Works. It was an agenda item before the Department of Budget Management. That was the first group who sort of sent the list of recommendations on to the government. Was she identified by name, disposition? By the time that the list got to the governor, I believe that all of the names and other identifying information, aside from the PIN, the sort of personnel number, had been removed. But what happened in this case was that the state was facing a large budget deficit. The governor said... Well, I understand all that. And we're not going to argue for the fact that it's commendable that they're trying to save the public money. It's just a question of whether they have to observe some standards of decency and could comply with the Age Discrimination Act and the EEOC and the Rehabilitation Act in doing so. I mean, they don't sue the Board of Public Works or the governor or the legislature. And Mr. Morris, I think, mischaracterized things slightly by saying that it was the state agency that abolished her position. The state agency did not abolish her position. The state agency has no authority to do that. State agency? When you refer to the state agency, you're meaning... You're referring to... Defendants. The Maryland Department of Transportation and the Maryland Transit Administration. Well, the state agency recommended the position be abolished. They may... Yes. They recommended it. They identified her as a position that could be slashed. They recommended her position be abolished. And what's the motive behind that? You say we can't get to that because we can't... That he can't start at an allegation of discrimination because you got to go to the top and find out whether it's legislative or not first. That's right. That's what this... But we know the legislature... We know, first of all, in the common parlance, that the legislature had nothing to do with it. Had absolutely nothing to do with it because then you got to say, well, the Board of Public Works is an arm of the legislature or part of the legislature and the governor's part of the legislature and they're the ones that really did it. But they aren't sued either. Well, then I don't know how you get... Even if they wanted to plead legislative immunity, they aren't even in here to do it. Well, with Baker versus Baltimore, which is finding precedent in this court, this court applied legislative immunity to the city of Baltimore's Board of Estimates. That's not a legislature. That was just like... The Board of Public Works is not in the case. Well, exactly, Your Honor. She knows... That's what's comparable to your Baltimore outfit. They know they can't sue. Is the Board of Public Works. And there you had the Baltimore outfit in the case. Here, the Board of Public Works is not in the case. And exactly, Your Honor. If they were here, they could plead legislative immunity. No, exactly, Your Honor. They can't... They know they can't sue the ultimate decision maker in this case because they conceded in their brief that that was protected by legislative immunity. The ultimate fiscal year 2009 budget cuts were protected by legislative immunity. So what they want to do is... And Mr. Dietz is deceased. He has been deceased since this lawsuit was filed. And I'm assuming that's why he was not But what they want to do is tease apart the fiscal year 2009 budget-making process and say when the recommendations got to the governor's desk, they became budget-making. But prior to that, they were administ... It was administrative employment activity. And that's just not what the cases support. The cases support that anyone who plays... Bogan says any person who plays an integral role in the budget-making process here by making their recommendations only at the behest of the governor. The governor asked the state agencies to identify for elimination up to 5% of the budgets. So here, the only... The governor initiates this process. There's really no question in this case that the governor and the Board of Public Works would be entitled to legislative immunity. That's why they haven't sued them. But they aren't sued here. That's why they haven't... So what are we arguing about this for? We're trying to get... Figure out whether she can get past... They're trying to tease... Get past this legislative immunity claim and get to her case. Well, it doesn't really make sense when you're trying to close a budget gap to say that the governor, some portion of the state, is immune based on legislative immunity because this is budget-making, but another arm of the state is going to have to defend over 350 lawsuits. That's the difference between legislative acts and executive acts. Executives are protected by qualified immunity. But the Supreme Court... Legislature, legislators, and judges, and prosecutors, presidents are protected by absolute immunity. But if I could... There's a different kind of immunity. If I could point you to the Supreme Court... The Supreme Court disagrees with you, Judge King. Mr. Deeds and those people can claim qualified immunity or sovereign immunity. You throw that in here. They got sovereign immunity. Maybe they do. But nobody ever got to that. Respectfully, Judge King, the Supreme Court disagrees with you. The Supreme Court has applied legislative immunity in the context where only people from the executive branch have been sued based purely for their role that they played in a budget process. The budget-making process... That doesn't mean it applies here. That doesn't mean it applies here. We have to look at the facts. You all, the district court, simply state that the governor and the Board of Public Works observed formal legislative procedures. Where does that show up in this record? And as to those things, you have to look at it in the light most favorable to her, and that their budget cuts generally bore the outward marks of public decision-making. Generally bore. You have to look at that in light most favorable to her, whether it did that or not. I mean, legislative immunity is not something to be played around with. It needs to be strictly applied and limited to the situation's absolute immunity. Any of these immunities need to be looked at carefully. We don't go around willy-nilly giving people immunity. I agree. I agree, Your Honor. Or agency's immunity. That's what you're asking for here for people that run the trains. Well, there are... In here, there are... And you're saying they can't get discovery on the allegations of racial discrimination. That's right, because you don't look into the motivations. But in any event, Judge King, if you look at the numbers, if you look at the numbers that were reduced just by the Maryland Department of Transportation, there were 12 males. The positions were filled by 12 men. You're giving me statistics. We're not talking about... We're talking about this lady. He said he's dealing with this one person. One person. We're talking about her, not whether statistically there was an impact that was greater on African-Americans or Caucasians or anything like that. What the statistics were. Well, I'm not sure... We're talking about this one person. Is she entitled to bring her case and pursue it at least through the discovery process to see whether she can make a case? Had she been terminated? Had she been fired from her job? Had she suffered some other adverse employment action? She has been fired from her job. You can call it something else, but she's been fired from her job. But the courts do call it something else. The courts have made a distinction between the firing or hiring of an employee and the elimination of a position from the state budget that that person happened to fill. There is a distinction in the case law. And the reason that that distinction is important is because when the governor goes about setting the budget, he has to be able to or she has to be able to rely on the people in the agencies who are closest, who are on the ground, who understand what cuts would have the least impact on public services. And the governor has to be able to rely on that information, as the district court stated here, free from worry that these people would be subject to the burdens of litigation. They need to, the governor needs to be able to rely on people within his administration. It really does. And a lot of governors  that they're entitled to absolute immunity, but they're not. They're entitled to qualified immunity. Unless they're doing something. But let's, and governors once in a while get pulled in through legislative immunity. If they got a legislative act, you say we're bound by the Maryland law. No, I'm saying you're bound by the, I'm saying you're bound by this court's president and the Supreme Court precedent, which has said that when an executive engages in budget making, which is legislative in character and legislative in function. But the governor's not sued here. The governor's not sued. He's not accused of firing her. As the district court stated, she's trying a backdoor around legislative immunity. This would create a perverse incentive for the governor and the board of public works to not rely on the agencies, to just say, we're just going to go through and pick at random positions to eliminate. Because if we rely on people within the agencies, then the agencies are going to be sued every time. And the O'Malley-Brown administration in Maryland has eliminated 350 filled positions from the budget because of the economic downturn. So that would expose the state to over countless lawsuits, endless litigation that an arm of the state would have to defend. In this case, the Maryland Department of Transportation. You want us to rubber stamp a proposition that they can do that, taking into account age, get rid of the old people, race, get rid of the ones that have the wrong race, other prohibited factors in connection with this. And that's really stretching this legislative immunity stuff. Judge Wilkinson's opinion in EEOC versus Washington Suburban Sanitary Commission supports that finding. In that case, there was a restructuring of the IT department within the Washington Suburban Sanitary Commission. And the people who lost their jobs during that restructuring brought age discrimination lawsuits. I like what Judge Wilkinson said about it. We've got to be careful. What Judge Wilkinson said was- And you have to prove that you observed all these legislative procedures and there was an outward marks of public decision making and that you did it right. And you did it summarily by a bunch of affidavits. You wouldn't even give deposition. Well, Judge King, if you look to page J, the Joint Appendix at 43 and 44, there is the Board of Public Works meeting agenda summary. I'm sure there are. Agenda summary. That's right. I mean, I think it would be- That's a place to start, but they need to be looked at if we're going to accord legislative immunity to people down the line who don't have anything to do with the legislature. In layoffs, it had nothing to do with the legislature. In Maryland, this is quintessential budget making. This is, this has, carries the exact same force of law as if the General Assembly adopted the governor's budget. In Maryland, the governor is the one who is principally responsible for budget making. He either submits a proposal to the General Assembly that the General Assembly can adopt or strike from, or he takes this sort of procedure where with approval from the Board of Public Works, they reduce unnecessary expenditures from the budget. The General Assembly has given the governor that authority. That authority has never been undermined, and here what the, what the governor was attempting to do was solve the state's looming fiscal crisis. That sort of activity is entitled to legislative immunity protection. Well, the governor can't sue. And another reason that this, that this case should be, should, that legislative immunity should apply, and I say I have 10 seconds, is because there would be no way to identify what the, all the proximate causes were of this woman's job being eliminated without having to include in the discovery the ultimate decision makers, the people at the Board of Public Works and the governor. And in this, also in, in Baker v. Baltimore, this court stated that risk is too great. We will not allow that. Legislative immunity attaches. This case is just like that one, and this court should affirm the judgment of the district court. Thank you very much. Apologize for going over. Thank you, Ms. Katz. Thank you. We appreciate it. Good job. Thank you very much. Mr. Morris. Thank you, Your Honor. Left my pen up here. I'll bring it, take it with you. I won't leave you any gifts. Let me add that we are only asking that you take a look at Judge Wilkinson's decision because we think it helps you address the kinds of issues that Ms. Katz was raising. The, in the sentence before, the one I think you quoted from his opinion, Judge Wilkinson says, calling the activities that the modified subpoena asks, or at least seeks to investigate here, and he quotes from Bogan, integral steps in the legislative process. Then he offers the judgment, which I think is the judgment we're asking this court to render. Would at the very, would at least on our present state of knowledge, expand legislative privilege beyond its proper bounds. We're just asking that those bounds properly be set. What we're further asking is those bounds, that those bounds properly be set with discovery to provide a factual record for doing so. Our focus, as was the properly modified EEOC subpoena, is not what the governor is doing, what the governor is intending, or what anybody other than Mr. Dietz did. And the focus is not so much what he recommended regarding the budget, but what did he do before he recommended. That rendered that recommendation an adverse employment action. What was done after that recommendation that rendered it an adverse employment action, not addressing motivation, it's addressing the full context of the events. But in your case, the EEOC declined to say that there had been any discriminatory conduct, yet they gave her a letter, a right to sue, but they found no discrimination. Well, the basis for at least the Title VII administrative process is that we're not looking for the EEOC to render that. The focus of the EEOC investigation is to provide an opportunity for conciliation if it's at all possible. That's the point of the investigation. The investigation has no evidentiary basis in the litigation at all. The investigation itself doesn't get the benefit of civil discovery. Indeed, I think if you look at the record, there's the assertion that the agency was giving what it wanted to give to the EEOC. What we're looking for is an opportunity where the agency is in a position  what at least an adversarial process would determine is relevant for the court to make a fair, just, and using the word that's used by Judge Wilkinson, proper determination here. We've not yet had that opportunity because what we've had are facts that have been preselected, cooked, and offered by the employer for the employer's benefit to support the employer's argument. What Judge Wilkinson's decision allows is that there may be, even given everything that Ms. Katz said, areas of activity that aren't covered by the immunity. And we'd just like a fair opportunity to explore those areas that this court has determined are fair game for inquiry for the EEOC and by implication, fair game for litigation by an aggrieved party. Thank you. Thank you, Mr. Morris. We'll come down and greet counsel and then.
judges: Robert B. King, Roger L. Gregory, Henry F. Floyd